IN THE MATTER OF THE APPLICATION OF JOHN MA-
DIN/LORD LAND DEVELOPMENT INTERNATIONAL
FOR PINELANDS DEVELOPMENT APPROVAL.

PLANNING BOARD OF HAMILTON TOWNSHIP, ÁTLANTIC
COUNTY, RESPONDENT, v. NEW JERSEY PINELANDS COM-
MISSION, JOHN MADIN, LORD LAND DEVELOPMENT IN-
TERNATIONAL AND CASTLEHARD DEVELOPMENT INTER-
NATIONAL, APPELLANTS.

Argued May 12, 1986—Decided August 1, 1986.

*Paul H. Schneider,* Deputy Attorney General, argued the cause for appellant New Jersey Pinelands Commission *(W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *John M. Van Dalen,* Deputy Attorney General, on the brief).

*Nelson C. Johnson* argued the cause for appellants John Madin, Lord Land Development International and Castlehard Development International *(Donio, Bertman, Johnson, Sahli & Greco,* attorneys).

*William C. Todd* argued the cause for respondent Municipal Planning Board for the Township of Egg Harbor *(Jacobs, Todd & Bruso,* attorneys; *A. Ralph Perone,* of counsel).

*Michael J. Fitzgerald* argued the cause for respondent Planning Board of Hamilton Township, Atlantic County *(Previti, Todd, Gemmel, Fitzgerald & Nugent,* attorneys).

The opinion of the Court was delivered by

PRESSLER, P.J.A.D., temporarily assigned.

We granted certification, 102 *N.J.* 380 (1985), to review a judgment of the Appellate Division according the Planning Boards of the Townships of Egg Harbor and Hamilton the right to request the New Jersey Pinelands Commission (Commission)

to reconsider, on hearing, a Pinelands Development Approval granted by the Commission's Executive Director for an extensive planned unit development proposed by John Madin, agent for Lord Land Development International and Castlehard Development International. Because the issues raised by the petition for certification have been rendered moot by regulatory developments that occurred after the Appellate Division's judgment, we now vacate our grant of petition for certification.

The facts of this dispute in the context of applicable state and federal legislation were set forth in detail in the Appellate Division opinion, 201 *N.J.Super.* 105 (App.Div.1985). In brief, the Pinelands National Reserve, consisting of approximately one million acres in the southern portion of the state, was established by the federal government in 1978. The federal legislation, 16 *U.S.C.A.* § 471i, designed to protect the ecologically and environmentally sensitive Pinelands area, called upon the State of New Jersey to establish a planning body to develop and administer a comprehensive management plan (CMP) governing all development in the area. New Jersey's interim response, Executive Order 71, was followed by the 1979 enactment of the Pinelands Protection Act, *N.J.S.A.* 13:18A–1 to –29, which established the Commission and charged it with the obligation of formulating a CMP. *N.J.S.A.* 13:18A–8. The Commission adopted a CMP effective January 14, 1981, codified as *N.J.A.C.* 7:50–1.1 to –8.1, pursuant to the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to –7.

The root of this controversy is the provision of the Act requiring municipalities located within the boundaries of the Pinelands to amend their master plans and zoning ordinances in conformance with the minimum standards of the CMP and to obtain Commission certification approving the proposed revisions prior to their adoption. *N.J.S.A.* 13:18A–12(b). Upon a municipality's failure to comply with this directive within a year after adoption of the CMP, the Commission is authorized to "adopt and enforce such rules and regulations as may be necessary to implement the minimum standards as contained in

the comprehensive plan as applicable to any such ... municipality." *N.J.S.A.* 13:18A–12(c).

The authority thus granted to the Commission was primarily implemented by *N.J.A.C.* 7:50–4.11 to –4.17, inclusive, which comprised Subchapter 4, Part II of the CMP (Part II rules), entitled: "Development Review—Development in Areas Without Certified Local Plans" (Part II). These rules, all since repealed or amended, as explained *infra,* transferred the local land-use approval power from the planning agency of the so-called uncertified municipality to the Executive Director of the Commission, who was authorized by *N.J.A.C.* 7:50–4.16 to issue a Pinelands Development Approval upon his finding that the proposed development satisfied the minimum standards of the CMP and was "otherwise consistent with the objectives of the Federal Act, the Pinelands Protection Act, and this Plan." At the time of the developers' submission of this PUD application for development in Hamilton and Egg Harbor Townships, both of those municipalities were still uncertified. The developer accordingly proceeded pursuant to the original Part II rules, obtaining the Pinelands Development Approval here in issue.

*N.J.A.C.* 7:50–4.17, as originally adopted as part of the Part II rules but since repealed, provided:

> Any interested person who is aggrieved by any determination made by the Executive Director pursuant to this Part may seek reconsideration of such determination as provided by *N.J.A.C.* 7:50–4.81.[1]

The Planning Boards of Hamilton and Egg Harbor Townships, objecting to various aspects of the developer's PUD application, sought reconsideration by the Commission pursuant to former *N.J.A.C.* 7:50–4.17. The Commission, however, denied the request, concluding by resolution that uncertified municipalities and their planning agencies were not "interested

---

[1]*N.J.A.C.* 7:50–4.81 provided an administrative review process including hearing by the Office of Administrative Law and Commission determination based on the record in accordance with the contested-case procedures of the Administrative Procedures Act, *N.J.S.A.* 52:14B–9 to –10.

parties" within the intendment of that rule. The two municipal planning boards appealed that ruling to the Appellate Division. In May 1985, the Appellate Division reversed and remanded to the Commission for an adversarial administrative hearing, to be participated in by the two municipalities, on the question of whether it should grant final approval to the application.

Within two months after the Appellate Division's opinion and in express response to it, the Commission proposed a comprehensive revision of the Part II rules. 17 *N.J.R.* 1719 to 1728. That revision was effected by emergency amendment on July 15, 1985, 17 *N.J.R.* 1918 to 1926, and was formally adopted on September 12, 1985. 17 *N.J.R.* 2394 to 2402. The new rules, which radically alter the role of uncertified municipalities in the development approval process and are expressly applicable to the development application before us, were thus effective prior to the Commission's filing of its petition for certification in this case. Regrettably and inexplicably, neither the petition nor any other submission or argument by the Commission, which adopted the new rules, or any other party advised us that new rules had conclusively disposed of the rights of both the developer and the two municipal planning boards in respect of this application. Indeed, we were not even told of the existence of the new rules.[2]

In brief, the original Part II of the CMP was replaced by a new Part II, *N.J.A.C.* 7:50–4.11 to –4.27, described by the Commission's summary as intended to

> change the procedures under which both the Pinelands Commission and uncertified municipalities review development applications. Following submission of a completed application to the Pinelands Commission staff, uncertified municipalities will be granted the authority to review development applications before the Pinelands Commission takes action on these development applications. Notice

---

[2]Following oral argument, we afforded counsel the opportunity to file supplemental letter briefs addressing the applicability of the new rules to the Madin application. Nothing in these briefs suggests to us the inapplicability thereto of these rules or affects our determination respecting the consequent mootness of the appeal.

of municipal approvals or disapprovals of the development proposals must be given to the Pinelands Commission and the Executive Director may initiate Commission review of the municipal action if it is determined that the action may be contrary to the environmental or land use standards of the Comprehensive Management Plan. At that time, interested parties including the municipality which granted or denied the development application may request a hearing. The Pinelands Commission itself will decide whether the municipal action should be overturned, affirmed, or modified to meet Comprehensive Management Plan standards. The determination of the Commission will be binding upon the municipality. [17 *N.J.R.* at 1720]

Thus, under the new Part II rules, a developer proposing a project in an uncertified municipality first submits his development application to the Executive Director, as formerly. *N.J. A.C.* 7:50–4.14. The Executive Director, as formerly, then reviews the application to determine whether it conforms to all the required criteria of the CMP. If he concludes that it does, however, he no longer issues a Pinelands Development Approval but rather a new document called a Certificate of Compliance. *N.J.A.C.* 7:50–4.15, –4.16. The import of this document is to authorize the uncertified municipality's planning agency itself to consider the development application on hearing and to adopt a resolution granting it preliminary approval or disapproval. *N.J.A.C.* 7:50–4.17, –4.18. If the municipal agency approves the application, the Executive Director reviews it again in the context of the resolution of approval. If satisfied of its continued conformance with the CMP, he may grant final approval. If not so satisfied, he refers it to the Commission for review on hearing. *N.J.A.C.* 7:50–4.19. If the local planning agency denies the development application, the Executive Director reviews it to determine whether the denial is contrary to CMP standards. If he concludes that it is not or that the denial is based on matters not regulated by the CMP, he in effect confirms the denial. If he otherwise concludes, he refers it to the Commission for review on hearing. *N.J.A.C.* 7:50–4.25. Both of these rules expressly provide for notice to the local planning agency and accord it the right to request a hearing whenever its preliminary planning action is susceptible to any

subsequent modification by the Commission. *N.J.A.C.* 7:50–4.-19(b), –4.25(b) and (c).

In sum, then, the issue as to which we granted certification was whether the local planning agency of an uncertified municipality, excluded by the original rules from direct participation in the application-review process, nevertheless had a right to seek the Commission's reconsideration under repealed *N.J.A.C.* 7:50–4.17. That issue has long since lost any point it might once have had since the new rules have, in significant measure, restored the decisional process to the uncertified municipalities and have accorded them hearing rights upon Commission review of their preliminary planning decisions.

Nor do the new rules leave any question as to the status of a still-unimplemented Pinelands Development Approval issued by the Executive Director prior to the effective date of the new rules. *N.J.A.C.* 7:50–4.27 unambiguously provides that that Approval is now the equivalent of a Certificate of Compliance. Thus, an applicant, like the developer here, who has nothing more than an old-rule Executive Director's Approval must now go to the local municipal planning agency for preliminary approval under *N.J.A.C.* 4:50–4.18. We see no other reasonable construction of *N.J.A.C.* 7:50–4.27, which reads in full as follows:

> A Pinelands Development Approval issued pursuant to the provisions of this part previously in effect shall have the same effect as a Certificate of Compliance issued pursuant to *N.J.A.C.* 7:50–4.15 (Action by Executive Director on application) unless the applicant received a valid local approval prior to July 15, 1985. If such a valid local approval was granted, the Pinelands Development Approval shall continue to have the same force and effect as if this Part had not been amended.

We are satisfied not only that the new Part II rules dispose of the controversy before us but also that they constitute an effective administrative response to all of the standing and administrative due process concerns expressed in the Appellate Division's opinion. We therefore do not address the Appellate

Division's holdings and our silence should not be construed as necessarily endorsing them.

The grant of the petition for certification is vacated.

*For vacation of certification*—Chief Justice WILENTZ, Justices CLIFFORD, HANDLER and GARIBALDI, and Judges ANTELL, PRESSLER and KING—7.

*Opposed*—None.